In the United States District Court
For The District of New Jersey

|  |  |  |
|---|---|---|
| ThinkUp, Inc., | : | |
| | : | |
| Plaintiff, | : | Docket No.: |
| | : | |
| v. | : | Complaint and Jury Trial Demand |
| | : | |
| Disruptive Products, Inc. | : | |
| | : | |
| and | : | |
| | : | |
| Tastemakers, LLC, | : | |
| | : | |
| Defendants. | : | |

Plaintiff ThinkUp, Inc. ("ThinkUp" or "Plaintiff"), by and through its attorneys Sherman, Silverstein, Kohl, Rose and Podolsky, P.A., by way of Complaint against Defendants Disruptive Products, Inc. ("Disruptive") and Tastemakers, LLC ("Tastemakers") (collectively "Defendants"), jointly and severally, hereby states and avers as follows:

## JURISDICTION AND VENUE

1. This action arises under the laws of the United States, the Lanham Act, 15 U.S.C. Sections 1051 et. seq., as well as the laws of the States of New Jersey and New York.

2. The jurisdiction of this Court is based upon 28 U.S.C. Sections 1331 and 1338, as well as 28 U.S.C. Section 1332.

3. This Court has jurisdiction over the claims arising under the laws of the State of New Jersey by virtue of 28 U.S.C. 1338(b) and 1367, and pursuant to the principles of pendent jurisdiction.

4.      This Court has personal jurisdiction over Defendants. Defendants have committed acts of intellectual property infringement in the State of New Jersey, including this judicial district, and have delivered the accused products into the stream of commerce with the expectation that they will be purchased by consumers in the State of New Jersey, including this judicial district, and elsewhere.  Defendants have sold or offered for sale its products, including products that are the subject of this Complaint, to consumers in the State of New Jersey, including this judicial district, and elsewhere.  Defendants have also breached their agreements with Plaintiff, a New Jersey corporation, and the actions giving rise to those breaches occurred in the State of New Jersey.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)-(d), in that Defendants are subject to personal jurisdiction within this judicial district and have committed acts of trademark infringement in this judicial district.

## THE PARTIES

6.      ThinkUp is a New Jersey corporation with a principal place of business located at 134 Haddon Avenue, West Berlin, New Jersey 08091.

7.      Disruptive is a Nevada corporation with a principal place of business located at 589 8th Avenue, 3rd Floor, New York, New York 10018.  Disruptive's registered agent is located at 701 S. Carson Street, Carson City, Nevada 89701.

8.      Tastemakers is believed to be a New York limited liability company with a principal place of business located at 51 N.E. 25th Street, Miami, Florida 33137.

## STATEMENT OF FACTS

9.      ThinkUp is a design studio and product development company which has long been in the business of creating, designing, sculpting, selling, and distributing toys and games for household use, including graphic designs, animations, 3D modeling, packaging designs, logos

2

and in-store display designs for video and computer games as well as other more traditional toys and games. Its founder, sole shareholder and President is Jerry Cummings ("Mr. Cummings"). Its corporate and trade name and general form of logo is below:



10.     In or about July 2017, Mr. Cummings met with Scott Bachrach ("Mr. Bachrach"), who was then the President and CEO of Tastemakers, in ThinkUp's West Berlin, New Jersey office to discuss multiple projects on which they were working together.

11.     While in ThinkUp's New Jersey office, Mr. Cummings showed Mr. Bachrach a foam core mockup of the original idea of what eventually became the *Arcade1Up* line of ¾ scale retro digital arcade games sold by Defendants to big box retailers for resale as well as direct to individuals for play in their homes.  Mr. Bachrach was impressed with the concept and mockup created by Mr. Cummings, and the two shook hands and agreed to work together to bring the idea to market.

12.     The oral agreement between the parties, was later reduced to an Agreement written exclusively by Mr. Bachrach and presumably his counsel.  A copy of the Agreement dated July

16, 2019, is attached as **Exhibit "A"** (the "2019 Arcade1Up Agreement"). It provided that ThinkUp would develop and design all aspects of the home version of the arcade game consoles (other than the actual game names, logos and concepts, such as *Pac Man* and *Mortal Kombat*, which were to be licensed from their owners), including but not limited to the cabinetry, the user interface controls and graphics, animations and even the *Arcade1Up* name and logo, while Tastemakers would secure the licenses for the retro games, contract for and finance the manufacturing of the products and arrange for distribution.

13. For its efforts, the parties agreed that ThinkUp would receive 3% of the "Net Sales" (defined in the contract as invoice price less returns, chargebacks, discounts, etc.) of each arcade game product developed by ThinkUp, for the sales life of the product. An email confirming the parties' agreement that the royalties would be 3% *for life* is attached as **Exhibit "B."** The following language was inserted in Section 6.A. of the 2019 Arcade1Up Agreement to confirm the permanency of the royalties: "At Termination [ThinkUp] will continue to receive commissions on all Arcade1Up machines which have been completed; however, it will not be entitled to commissions on machines that are in the development stage and not completed at the time of termination."

14. ThinkUp thereafter invested, at its cost, hundreds if not thousands of man hours designing each of the game consoles for which licensing was secured, including but not limited to the unique sharkfin shape of the housing above the digital screen, and the ¾ scale (as compared to commercial) consoles designed to better suit home use, so that children could play them standing up. ThinkUp also designed a riser to allow the unit to "rise" to fit a standing adult.

3562471.1

15.   ThinkUp named the product *Arcade1Up*, reflecting that it was a ThinkUp product and idea, and ThinkUp designed the logo used for the line of products as follows:



16.   ThinkUp created logo animations on startup, created the user interface, graphics and control flow, and designed the retail packaging for all of the products.  ThinkUp developed the manner in which the products could be compactly packaged in parts for transport and retail sale, and then easily assembled by the consumer at home, pursuant to an instructions manual set forth below in various languages, also developed by ThinkUp.



3562471.1

17.    Currently, there are 62 different *Arcade1Up* game consoles with a ThinkUp logo on the licensing startup screen.  An example of one of these is below:



18.    ThinkUp provided daily design direction and assistance to the manufacturer of the products in Hong Kong, traveled to Hong Kong on multiple occasions, at its cost, to oversee design, created marketing and sales sizzle animation for social media, created planogram and store display designs, created trade show and sales meeting art/design setups, and traveled around the country by truck attending trade shows and sales meetings in order to develop interest in the products.

19.    The 2019 Arcade1Up Agreement does not include a "work made for hire" provision or any other provision that assigns ownership of the copyrightable work and other intellectual property created by, or work product of, ThinkUp to Disruptive.

20.    Neither Mr. Bachrach nor any other representative of the Defendants ever explained to ThinkUp the difference or relationship between Defendants.  In all communications

between the parties, with the exception of the 2019 contract and the 2023 letter terminating the contract, ThinkUp dealt exclusively with Tastemakers, and it was Tastemakers that wrote checks and wired monies to ThinkUp.

21.     Over the years that followed the execution of the 2019 Arcade1Up Agreement, over 3 million *Arcade1Up* units were sold to *Walmart*, *BestBuy*, *Target* and other retail stores, as well as direct to consumers.  Tastemakers paid ThinkUp commissions purportedly equal to 3% of the Net Sales of *Arcade1Up* units sold as required under the contract, although the reporting of sales figures upon which the commissions were calculated was insufficient for Plaintiff to determine the accuracy of the payments.

22.     In or about February 2019, Mr. Cummings, on behalf of ThinkUp, contacted Mr. Bachrach with a new concept that ThinkUp later named the "Infinity Game Table" and "Infinity Game Board" (depending on its size).

23.     The concept was a digital touchscreen, with responsive tactile feedback, to play boardgames through a digital interface, but otherwise the way the board games were originally designed to be played, by sitting around the "board" with all players having a view of the game and interacting with each other.

24.     The *Infinity* concept thus had two key components – the hardware (the touchscreen which could be produced in the form of a table that could be surrounded by the players, or in smaller sizes which could be laid or stand upon other surfaces), and the software (which ran the games themselves, the interface, the settings and the game store).  The idea was that the *Infinity* game system would be sold with a certain number of pre-installed games, and would also have a built-in "game store" from which the purchaser of the unit could buy and download additional

games created and offered by ThinkUp and other third party designers, similar to how games may be purchased for mobile phones.

25.     The *Infinity* thus had a dual revenue stream, one for the original sale of the hardware and its pre-installed games, and another from the game store where the consumer could purchase additional games for the unit.

26.     Similar to the *Arcade1Up* line of products, the original concept for the *Infinity* products was the sole brainchild of Mr. Cummings and ThinkUp.

27.     Again, Mr. Bachrach was impressed with and excited about the concept created by Mr. Cummings and ThinkUp, and was anxious to partner with them in order to bring the *Infinity* products to market.

28.     Relying upon the parties' long relationship and mutual trust, ThinkUp moved forward with the development of the *Infinity* concept while continuing to discuss terms for the agreement on the new product line, to include a similar 3% lifetime commission on the sale of the hardware, and a fair market split of the revenue generated by the sale of additional games developed by ThinkUp through the *Infinity* game store.  Again, Mr. Cummings and his team at ThinkUp spent countless hours designing and developing every aspect of the *Infinity* product line.

29.     ThinkUp created the *Infinity* name and logo set forth below, an infinity-like symbol with hatches, resembling railroad tracks or ladder steps:



30.     In addition, after a number of iterations, ThinkUp designed the physical table/board in three sizes, having widths of 19 inches, 24 inches and 32 inches; the largest, which proved to be the most popular, sold with legs so that it would appear and/or serve as a coffee table when not being played, is set forth below.



31.     ThinkUp worked with a third-party developer to create a digital version of 16 classic Hasbro games (such as *Monopoly*, *Risk* and *Battleship*), and created 29 other original games that had never existed.

32.     By the time the *Infinity* game system was released to retail, ThinkUp had completed the design of the 50 games to be included with the initial unit, along with original screensavers (called "tablecloths") which would run on the unit at the consumer's option.  Below are a sampling of the screensavers, many of which contain the *Infinity* logo:

3562471.1







33.   Examples of the original games designed by ThinkUp appear below:



34.     Below is a list of the original games designed by ThinkUp included with every

*Infinity* system as well as original games designed by ThinkUp and offered in the game store:

| INFINITY GAME BOARD & INFINITY GAME TABLE - APP REPORT 1-16-24 | |
|---|---|
| **DESCRIPTION** | **THINKUP LOGO INCLUDED** |
| | |
| **FREE "ORIGINAL GAME APPS" CREATED BY THINKUP** | |
| | |
| 4 Pics 1 Word | |
| Chicken Wrangle | |
| Dizzy Tanks | |
| Doodle Monster Golf | |
| Dots and Boxes | |
| Infinity Pirate Battle | |
| Landing Zone | |
| Mini Fini Foosball | |
| Raceway Grand Prix | |
| Space Tennis | |
| Tablecloths | |
| Tablecloths: Halloween | |
| Whack-O-Moles | |
| What's the Word | |
| | |
| **PAID "ORIGINAL GAME APPS" CREATED BY THINKUP** | |
| | |
| 8 Ball Pool | |
| Artists and Liars | Yes |
| Carrom | |
| Chess Oops! All Knights | |
| Chess Oops! All Pawns | |
| Claytime: Clay Pigeons | |
| Claytime: Sliced Up | |
| Claytime: Swat | |
| Claytime: Toad Alley | |
| Crossy Word | |
| Dominoes | |
| Fight Card | Yes |
| Harry Potter Wizard's Chess | |
| Hues and Cues | |
| Infinity Ludo Adventure | |
| Landing Zone - In App Purchases | |
| Landing Zone - In App Purchases | |
| Mad Dash | Yes |
| Minesweep | |
| Mini Fini Pinball | |
| Monopoly: Batman Edition | |
| No Cops Just Robbers | Yes |
| No Cops Just Robbers - In App Purchases | Yes |
| Oh No! | |
| Pizza Party | |
| Puzzle Play: DC Comics | |
| Puzzle Play: Game of Thrones | |
| Puzzle Play: Harry Potter | |
| Rummy | |
| Solitaire: DC Comics | |
| Spades | |
| Speedy Service | |
| Spookiboo Hotel | Yes |

Thinkup                                                                                              1

35.     With respect to sales from the game store, the parties agreed that third party developers would receive the industry standard 70% of the sales price of the game, with 30% retained by Defendants less the 3% commission payable to ThinkUp for revenue generated by the product it designed.

36.     Currently there are 32 third-party creators (not counting ThinkUp) in the game store receiving commissions on sales.

37.     ThinkUp created 37 unique games offered for sale in the game store for which it has not been paid commissions to date by Defendants.

38.     While Mr. Cummings continued to press Mr. Bachrach for compensation for new games it developed and sold through the game store and for better reporting, sales of the *Infinity* sky rocketed, and ThinkUp began receiving what Mr. Cummings understood to be payments representing 3% of the net sales for the *Infinity Game Table* and *Infinity Game Board* (as well as those for the *Arcade1Up* products).  To better manage cash flow, Tastemakers began paying ThinkUp a fixed monthly amount subject to reconciliation at certain intervals.

39.     Then, after July 2023, without notice or good reason, Defendants stopped sending ThinkUp its 3% commission for the sales of either the *Arcade1Up* or the *Infinity* lines of product.

40.     On August 10, 2023, ThinkUp received a call from Davin Sufer, the Chief Operating Officer of Tastemakers.  Mr. Sufer advised that Mr. Bachrach had resigned from Defendants because of financial reasons, but that their relationship with ThinkUp was still valued by Defendants and that their agreements with ThinkUp would still be honored.  He further asked that Mr. Cummings attend a meeting on August 16, 2023 in Miami to discuss how the parties would proceed without Mr. Bachrach.

41.     At that meeting, attended by Tastemakers Chief Financial Officer Dora Dvir and an individual named Mackenzie Shea, Defendants changed course and advised Mr. Cummings that they would no longer honor the agreement to pay ThinkUp 3% of the revenues received for the sales of the *Arcade1Up* and *Infinity* product lines, or any other compensation, except possibly for some future drawings if needed by Defendants. Blindsided, astounded and confused by the news, Mr. Cummings reminded those in the meeting that he and his company were principally responsible for the very existence and success of the products and insisted on receiving what was agreed to be paid in advance of their development.

42.     On August 21, 2023, Disruptive sent a letter to ThinkUp notifying the company that the 2019 Arcade1Up Agreement was being terminated in 30 days, brazenly blaming the termination on ThinkUp's refusal to renegotiate its royalty arrangement and rumors of ThinkUp employees planning on discontinuing their work with respect to the *Arcade1Up* and *Infinity* products if the commissions were not to be paid, a copy of this letter is attached as **Exhibit "C."** The termination letter ignores the provision in the 2019 Arcade1Up Agreement that provides for commissions for the life of the product, and fails to mention the parties' understandings with respect to the *Infinity* line of product entirely.

43.     On January 31, 2024, Disruptive sent a follow-up letter attaching what was described as a statement of final commissions due and a general release, seeking to secure Plaintiff's full waiver and release of its rights and claims against Defendants for a lump sum payment of $213,698 (subject to further reduction if Disruptive was able to find more set-offs when it has access to further data).  A copy of the letter is attached hereto as **Exhibit "D."**  The payment represented commissions on orders received through the termination date, which would have been owed to ThinkUp regardless.  The report attached to the January 31, 2024 letter once

again failed to provide adequate detail in order to determine its accuracy even through the alleged termination date.

44.    In a recent press release, *Arcade1Up* was noted as having been named "Best of CES" (referencing the annual Consumer Electronics Show) in 2022 and 2023 and becoming the 4th largest brand in gaming hardware, and referencing the *Infinity Game Board* and *Infinity Game Table* as being "game changers" in their industry.[1]

45.    Upon information and belief, the products developed by Plaintiff and sold by Defendants have and, if Plaintiff is permitted to continue to market them, will continue to generate sales in the hundreds of millions of dollars.

46.    Despite the fact that the very idea of the *Arcade1Up* and *Infinity* product lines were "thought up" by Mr. Cummings and his team at ThinkUp, and despite the countless hours invested by the team at ThinkUp in developing nearly every detail of the product lines in reliance on Defendants' promise to pay ThinkUp 3% of the net sales of these products for life, as well as a fair royalty on the sale of the games developed by ThinkUp through the *Infinity* game store, Defendants seek to sever Plaintiff from the fruits of its labor as originally promised to Plaintiff and upon which Plaintiff relied in making the substantial investment of time and money in developing these innovative products.

**Defendants' Infringement of ThinkUp's Marks and Conversion of Intellectual Property**

47.    Since terminating the relationship with Plaintiff, including the implied license of Plaintiff's marks, Defendants have been manufacturing, offering for sale, selling, using, and/or importing products containing trade names and trademarks created by Plaintiff, including

---

[1] PRNewswire.com, January 12, 2024 (source Arcade1Up).

3562471.1

"ThinkUp", "Arcade1Up", "Infinity Game Table" and "Infinity Game Board", and engaging in activities infringing the same.

48.     When Defendants adopted the "ThinkUp" trade name and logo, said marks had been in use and in the stream of commerce for many years.

49.     ThinkUp's extensive use of its marks have served as notice to Defendants of ThinkUp's ownership of its marks.

50.     Defendants' bad faith activities create a likelihood of confusion in the marketplace.

51.     Defendants' use of ThinkUp's marks constitute a false designation of origin, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' goods with ThinkUp, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by ThinkUp.

52.     Defendants are illegally profiting from its infringement of ThinkUp's marks.

53.     Defendants' acts have been without license or authority of ThinkUp.

54.     Upon information and belief, Defendants are aware of ThinkUp's marks, have attempted to register those or similar marks, have chosen to use, sell, and offer for sale products carrying ThinkUp's marks or other marks intended to copy ThinkUp's marks, and/or have engaged in willful blindness to ThinkUp's marks and rights.

55.     By using marks likely to cause confusion with ThinkUp's marks, Defendants have intentionally sought to confuse ThinkUp's actual and potential customers, and to capitalize on the extensive goodwill, brand loyalty, image, and associations that ThinkUp has created and established.

56.     By attempting to terminate its relationship with Plaintiff and the agreed upon commissions on future sales, Defendants are seeking to convert Plaintiff's valuable intellectual property, including but not limited to, its designs, animations and original games, without fair compensation to Plaintiff.

57.     Defendants have failed to pay ThinkUp 3% of the net sales of the *Arcade1Up* and *Infinity* product lines as promised to Plaintiff and upon which Plaintiff relied to its detriment.

58.     Defendants' actions have caused, and are causing, irreparable damage to ThinkUp.

59.     ThinkUp has been damaged by Defendants' bad faith activities and will continue to be damaged unless Defendants are restrained and enjoined by this Court.

60.     Upon information and belief, Defendants' activities are deliberate and willful.

61.     ThinkUp has no adequate remedy at law.

62.     ThinkUp has been damaged by Defendants' illegal actions in an amount to be determined by a jury and this Court.

## COUNT I

### Breach of Contract

1.     ThinkUp incorporates all of the above allegations as though fully set forth herein.

2.     ThinkUp and Defendants had lawfully binding agreements which were materially breached by Defendants.

3.     The 2019 Arcade1Up Agreement, attached as **Exhibit "A,"** promised ThinkUp 3% of the revenues for life of the *Arcade1Up* game consoles.

4.     Despite this agreement, Defendants have failed to pay such monies to ThinkUp since July 2023 and, upon information and belief, failed to pa

5.     y accurate and full commissions for sales prior to July 2023.

16

6.     The arrangement between Plaintiff and Defendants for the development of the *Infinity* line of products was an oral understanding not yet reduced to writing.  By this arrangement, Defendants promised to pay ThinkUp 3% of the net sales of the *Infinity Game Table* and *Infinity Game Board* <u>plus</u> 3% of the revenues earned from the sale of games developed by third parties and sold through the *Infinity* game store, <u>plus</u> a 70% developer's commission on sales of new games developed by ThinkUp and sold through the game store.

7.     Despite this arrangement, Defendants have failed to pay any monies to ThinkUp since July 2023 for the sales of the *Infinity* products and the games it developed.

8.     ThinkUp has suffered damages in excess of one million dollars as a proximate result of Defendants' breaches.

## <u>COUNT II</u>

## <u>Trademark Infringement</u>

## <u>Pursuant to Lanham Act15 U.S.C. §1051 et. seq.</u>

9.     ThinkUp incorporates all of the above allegations as though fully set forth herein.

10.    This claim arises under the Lanham Act 15 U.S.C. §1051 et. seq.

11.    This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1331.

12.    Defendants' acts constitute infringement of ThinkUp's trademark rights.

13.    Upon information and belief, Defendants' acts of infringement were and are willful and deliberate.

14.    Defendants are profiting from its infringing activities.

15.    ThinkUp has been and continues to be damaged by Defendants' illegal conduct.

## <u>COUNT III</u>

## <u>Unfair Competition Under the Lanham Act</u>

16.    ThinkUp incorporates all of the above allegations as though fully set forth herein.

3562471.1

17.     Defendants' actions, including its trademark infringement, constitutes unfair competition in violation of the Lanham Act.

18.     Defendants have adopted, used, and continue to use marks that are identical to ThinkUp's marks and that pose a likelihood of confusion in violation of law.

19.     Upon information and belief, Defendants have been intentionally trading off of, and continue to trade off of, ThinkUp's marks and goodwill.

20.     Upon information and belief, Defendants' actions have been and are knowing and willful.

21.     ThinkUp has been and continues to be damaged by Defendants' illegal conduct.

## COUNT IV

## Unfair Competition Under State Law

22.     ThinkUp incorporates all of the above allegations as though fully set forth herein.

23.     This claim arises under the common law of the States of New Jersey and New York.

24.     This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1367.

25.     ThinkUp has promoted its products and marks, through extensive time, labor, skill and money.

26.     Defendants have misappropriated the results of that labor and skill and those expenditures of ThinkUp.

27.     Defendants have used marks that are identical to ThinkUp's, for the same types of goods, in competition with ThinkUp, gaining an unfair advantage.

28.     Defendants' use of the ThinkUp name and mark promotes an association in the minds of the public between its marks and ThinkUp's marks, and between ThinkUp and

Defendants, thereby causing a likelihood of confusion, suggesting an affiliation between the parties, and/or a sponsorship by ThinkUp.

29.     Upon information and belief, Defendants intended to create an association between its marks and ThinkUp's marks because of ThinkUp's good reputation in the field.

30.     Defendants' actions have caused significant commercial damage to ThinkUp.

31.     Upon information and belief, Defendants' actions are knowing and willful.

32.     Defendants' conduct is illegal and actionable under the common law of unfair competition of the States of New York and New Jersey.

33.     ThinkUp has been injured by Defendants 's illegal actions and is entitled to the remedies provided under state law.

### COUNT IV

### Quasi-Contract and Unjust Enrichment

34.     ThinkUp incorporates all of the above allegations as though fully set forth herein.

35.     With respect to the sales of the *Infinity* line of products, Defendants have breached the understanding between the parties that a formal agreement would be forthcoming providing ThinkUp with at least 3% commissions for the sales of each unit for life,  at least a 3% commission for the revenues from the sale of new games developed by third parties, and 70/30 split for the sale of the apps from the game store ThinkUp designed.

36.     Defendants' receipt of revenues for the work performed by Plaintiff are benefits Defendants received at Plaintiff's expense under circumstances that make it unjust for Defendants to retain such benefits without commensurate compensation.

37.     Defendants thus have been unjustly enriched by such revenues.

38.     Such revenues should be disgorged from Defendants and awarded to Plaintiffs.

## COUNT V

## Conversion

39.     Defendants have converted ThinkUp's intellectual property rights, ideas, designs, and royalties, intentionally and willfully, with an aim to harm and damage ThinkUp.

40.     Defendants' conduct was done maliciously and with an intent to destroy ThinkUp.

41.     ThinkUp has suffered damages in excess of one million dollars as a proximate result of Defendants' actions.

42.     ThinkUp is also entitled to punitive damages because of Defendants' willful and malicious acts.

**WHEREFORE**, ThinkUp demands judgment against Defendants as follows:

A.      That Defendants, its officers, agents, sales representatives, servants, employees, associates, attorneys, successors and assigns, and any and all persons or entities acting by, through, under, or in active concert or in participation with any or all of them be enjoined from doing, abiding, causing, or abetting the following:

   a.  Making, using, selling, offering for sale, importing, promoting, advertising, marketing, and/or distributing products and/or packaging with the ThinkUp mark on it, and any further mark likely to cause confusion with Plaintiff's marks;

   b.  Making, using, selling, offering for sale, importing, promoting, advertising, marketing, and/or distributing products that contain intellectual property created by and belonging to Plaintiff, or that otherwise infringes upon the properties of Plaintiff; and,

   c.  Otherwise competing unfairly with Plaintiff in any manner whatsoever.

B.      That Defendants be adjudged to have engaged in federal unfair competition under Section 43 of the Lanham Act, 15 U.S.C. §1125;

C.      That Defendants be adjudged to have engaged in unfair competition under the common law and statutory law of the States of New Jersey and New York;

D.      That Defendants, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Defendants be preliminarily and permanently enjoined from otherwise competing unfairly with ThinkUp;

E.      That this Court enjoin Defendants' illegal actions complained of herein;

F.      That this Court order Defendants to destroy all existing products and packaging bearing the mark "ThinkUp" or any mark likely to cause confusion therewith;

G.      That this Court order Defendants to notify all of its customers of the mislabeled goods and packaging;

H.      That Defendants be directed to file with this Court and serve on ThinkUp within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

I.      That Defendants be required to account for and pay over to ThinkUp any and all revenues and profits derived by it by reason of the acts complained of in this Complaint, including an assessment of interest on the damages so computed, and that the damages be enhanced to the maximum available under all applicable federal and state law;

J.      That Defendants be required to account for and pay over to ThinkUp any and all of ThinkUp's damages sustained by ThinkUp by reason of the acts complained of in this Complaint, including, but not limited to, ThinkUp's lost profits, including an assessment of

interest on the damages so computed, and that the damages be enhanced to the maximum available under all applicable federal and state law;

K.      That ThinkUp be awarded punitive or exemplary damages under New Jersey and New York law because of the egregious, malicious, and tortious conduct of Defendants complained of herein;

L.      That any revenues Defendants received for which it has not paid a 3% commission to ThinkUp, and any revenues received by Defendant for ThinkUp's work once it purported to terminate ThinkUp be disgorged and awarded to ThinkUp.

M.      That ThinkUp be awarded damages equal to the revenues by which Defendants were unjustly enriched.

N.      That ThinkUp be awarded its reasonable attorneys' fees and costs;

O.      That ThinkUp be awarded pre-judgment and post-judgment interest;

P.      That ThinkUp obtain all further relief permitted under the laws of the United States and the State of California; and,

Q.      That ThinkUp obtain all such other and further relief as the Court may deem just and equitable.

                    SHERMAN, SILVERSTEIN, KOHL,
                    ROSE & PODOLSKY, P.A.


        By:     /s/Alan C. Milstein
                    Alan C. Milstein, Esquire
                    308 Harper Drive, Suite 200
                    Moorestown, NJ 08057
                    Telephone: 856-662 0700
                    E-Mail: amilstein@shermansilverstein.com
                    Attorneys for Plaintiff ThinkUp, Inc.

Dated: February 2, 2024

## JURY TRIAL DEMAND

Pursuant to Rule 38, Fed. R. Civ. P., ThinkUp hereby demands a trial by jury on all

issues set forth herein that are properly triable to a jury.

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.

By:    */s/Alan C. Milstein*
Alan C. Milstein, Esquire
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Telephone: 856-662 0700
E-Mail: amilstein@shermansilverstein.com
Attorneys for Plaintiff ThinkUp, Inc.

Dated: February 2, 2024

23

3562471.1